Joseph F. Postnikoff
State Bar No. 16168320
Email: jpostnikoff@romclaw.com
ROCHELLE MCCULLOUGH, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com

PROPOSED COUNSEL FOR DEBTORS IN POSSESSSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| W.D. TOWNLEY LUMBER CO., INC., | § | Case No. 25-41053-elm11 |
| d/b/a TOWNLEY LUMBER CO., | § | |
| | § | |
| TOWNLEY PALLET MANUFACTURYING | § | Case No. 25-41057-mxm11 |
| LLC, | § | |
| | § | |
| TLC TRANSPORTATION, L.L.C., | § | Case No. 25-41058-mxm11 |
| | § | |
| Debtors. | § | EXPEDITED HEARING REQUESTED |

**MOTION FOR INTERIM ORDER AUTHORIZING DEBTORS TO: (I)
USE CASH COLLATERAL; (II) MAINTAIN AND
CONTINUE TO OPERATE UNDER FACTORING AND SECURITY
AGREEMENT IN ORDER TO SELL ACCOUNTS POST-PETITION TO
COMMERCIAL FINANCE GROUP/TEXAS, LLC AND TO INCUR
CREDIT FROM COMMERCIAL FINANCE GROUP/TEXAS, LLC
PURSUANT TO 11 U.S.C. SECTION 363(b), (c), (f) AND (m); (III) OBTAIN
CREDIT FROM COMMERCIAL FINANCE GROUP/TEXAS, LLC
PURSUANT TO 11 U.S.C. SECTIONS 364(c)(1), (c)(2) & (d)(1); (IV)
GRANT COMMERCIAL FINANCE GROUP/TEXAS, LLC ADEQUATE
PROTECTION IN THE FORM OF FIRST PRIORITY LIENS AND
SECURITY INTERESTS ON PROPERTY OF THE DEBTORS' ESTATES
PURSUANT TO 11 U.S.C. SECTIONS 361 AND 363(e); (V) GRANT
ADEQUATE PROTECTION TO SECURED CREDITORS; (VI) MODIFY
THE AUTOMATIC STAY; AND (VII) GRANT RELATED RELIEF
<u>RETROACTIVELY TO THE PETITION DATE</u>**

TO THE HONORABLE BANKRUPTCY JUDGE:

COME NOW, W.D. Townley Lumber Co., Inc. d/b/a/ Townley Lumber Co. ("Townley Lumber"), Townley Pallet Manufacturing, LLC ("TPM"), and TLC Transportation, L.L.C. ("TLC"), the Debtors-in-Possession in the above styled and numbered Chapter 11 cases and file this *Debtors' Motion for an Interim Order Authorizing to (I) Use Cash Collateral; (II) Maintain and Continue to Operate Under Factoring and Security Agreement[1] in Order to Sell Accounts Post-Petition to Commercial Finance Group/Texas, LLC and to Incur Credit From Commercial Finance Group/Texas, LLC Pursuant to 11 U.S.C Section 363(b), (c), (f) AND (m); (III) Obtain Credit from Commercial Finance Group/Texas, LLC Pursuant to 11 U.S.C. Sections 364(c)(1), (c)(2), & (d)(1); (IV) Grant Commercial Finance Group/Texas, LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of Debtors' Estates Pursuant to 11 U.S.C. Sections 361 and 363(e)*; (V) Grant Adequate Protection to Secured Creditors; (VI) Modify the Automatic Stay; and (VII) Grant Related Relief Retroactively to the Petition Date* (the "Motion"), and in support thereof would respectfully show unto the Court as follows:

**Jurisdiction**

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter involves administration of the estate and therefore constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K) and (M).

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The basis for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014.

---

[1] The parties are seeking approval to enable the Debtors to seamlessly continue selling its accounts pursuant to the 2023 Factoring Agreement as supplemented by the Rider.

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession**
**Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;**
**(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 2**

**Bankruptcy**

4.      The Debtors filed Voluntary Petitions for Relief Under Chapter 11 of the United States Bankruptcy Code on March 26, 2025 (the "Petition Date") and have continued to operate as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**Background**

5.      The Debtors are headquartered in Henderson, Texas where they conduct their lumber milling operations. Townley Lumber mills lumber for construction of pallets. TPM owns the real property upon which milling operations are conducted. TLC Transportation hauls pallets by the truckload to customer locations.

6.      Townley Lumber is owed by Billy Joe Townley and his daughter, Aleigh Townley and owns one hundred percent of TPM which in turn owns one hundred percent of TLC.

7.      As of the Petition Date, the Debtors had combined funds on hand of approximately $185,000.00 and inventory on hand with a value of approximately $40,000.00. All accounts receivable generated from pre-petition operations have been factored. Ongoing operations are anticipated to continue to generate revenues sufficient to not only support current operating expenses, but an exit from this reorganization proceeding.

**Creditors With Interests in Accounts, Inventory and Contract Rights**

8.      In a series of transactions, Townley Lumber, TPM and TLC borrowed funds from Regions Bank, certain of with are subject to guarantees by the United States Small Business Administration (the "SBA") collateralized by liens against real property of TPM and untitled personal property of Townley Lumber, TPM and TLC perfected by the filing of UCC-1 Financing Statements (the "Regions Bank Liens")

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 3

9.      The Department of the Treasury, Internal Revenue Service (the "IRS") asserts claims for unpaid Form 940 and 941 taxes against Townley Lumber certain of which are secured by IRS tax liens filed with the Secretary of the State of Texas on March 5, 2024, December 2, 2024 and January 1, 2025 and recorded in Rusk County, Texas on November 27, 2024 (the "IRS Liens").

10.     The SBA has made a disaster loan to Townley Lumber and asserts liens against untitled personal property of Townley Lumber and TLC perfected by the filing of UCC-1 Financing Statements (the "SBA Liens").

11.     Regions Bank, the IRS and the SBA are hereinafter referred to as the Secured Creditors.

**Commercial Finance Group/Texas, LLC Factoring Agreement**

12.     On or about October 6, 2023, Commercial Finance Group/Texas, LLC ("CFGT") as factor, and Townley Lumber and TPM (collectively the "Debtors"), as borrowers, entered into a Factoring and Security Agreement dated October 6, 2023, which entitled CFGT to, among other things, purchase the Debtors' Accounts arising from the Debtors' ordinary course of business (as amended, supplemented and/or restated, hereinafter, the ("2023 Factoring Agreement"). The Debtors and CFGT have entered into a Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement ("Rider", and together with the 2023 Factoring Agreement, the "Post-Petition Agreements"), which is subject to this Court's approval as requested by the Motion.

13.     Prior to the Petition Date, in exchange for CFGT's payments for purchase of the Debtors' Acceptable Accounts (as defined in the 2023 Factoring Agreement) (hereinafter, "Advances"), pursuant to and in accordance with the 2023 Factoring Agreement, CFGT asserts it possesses a pre-petition secured claim as of the Petition Date, which amount excludes fees and

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 4

costs of whatever kind or nature, including attorneys' fees that CFGT is entitled to recover in accordance with the Post-Petition Agreements ("Pre-Petition Obligations").

14.    CFGT's liens and security interests granted by the 2023 Factoring Agreement are perfected by the following UCC-1 Financing Statements recorded with the Texas Secretary of State as follows:

UCC-1 19-0037930870

      Assigned to CFGT by UCC 24-00024676
      Continuation by UCC 24-00261468

UCC-1 24-0021192293

15.    CFGT holds an unavoidable, duly perfected first priority ownership interest in pre-petition Purchased Accounts (as defined in the 2023 Factoring Agreement) and an unavoidable, duly perfected first priority security interest in the Collateral (as defined in the 2023 Factoring Agreement), including, but not limited to any non-Purchased Accounts that serves to secure CFGT's pre-petition secured claim arising under the 2023 Factoring Agreement.

16.    Debtors and CFGT have been operating under the 2023 Factoring Agreement up to and including the Petition Date.

17.    In general, Debtors receive, after the reserve account allocations and fees, from CFGT, approximately 85% of the purchase price on the purchase date.

18.    Post-petition, CFGT has agreed to continue to purchase the receivables of Debtors in the same manner it purchased receivables pre-petition, including requiring the same security and lien rights in Debtors' assets that it maintained pre- petition. To that end, Debtors and CFGT seek an order that allows the 2023 Factoring Agreement to continue post-petition and allows receivables be sold pursuant to Section 363(b) of the Bankruptcy Code.

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 5

19.     In addition, CFGT requires protections under Section 364 of the Bankruptcy Code to protect against any assertion of any other Secured Creditor in the Collateral, particularly any claim of the IRS. Internal Revenue Code Sec. 6323(c) grants creditors limited priority over the federal tax lien to the extent that the loan or purchase is made within 45 days of the filing of the notice of federal tax lien or made before a lender or purchaser had actual knowledge of the filing, if earlier. As a result, absent the relief set forth herein, the federal tax liens potentially enable the IRS to prime the current first priority security interest of CFGT in potential Purchased Accounts acquired by CFGT in the future.

**Debtors Need for Use of Cash Collateral and Factoring of Accounts Receivable**

20.     Debtors have no other source of operating funds available other then available Cash Collateral, as defined in section 363 of the Bankruptcy Code and continuation of the factoring relationship with CFGT as proposed herein. For the first two weeks of this bankruptcy proceeding, the Debtors have projected expenses of operation which are necessary to be satisfied to preserve the assets of the bankruptcy estates. The projections are incorporated into the Budget attached hereto and incorporated herein as Exhibit A. In the Budget, the Debtors' propose to satisfy expenses of operation totaling approximately $534,000.00 on an interim basis. Prior to a final hearing on this Motion, the Debtors will present cash flow projections and a budget for continued operations of the Debtors pending confirmation of a chapter 11 plan of reorganization.

21.     Debtor and CFGT have agreed to maintain their existing 2023 Factoring Agreement as a post-petition agreement and wish to operate on a post-petition basis in accordance with the terms of the 2023 Factoring Agreement, and subject to and conditioned upon the Bankruptcy Court.

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 6**

22.     To that end, the parties have agreed to enter into that certain *Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement* (the "Rider"). A true and accurate copy of the Rider is attached hereto as **Exhibit B**. Pursuant to the Rider, the 2023 Factoring Agreement is amended as follows:

(a)     "Collateral" as defined in Section 1.1 shall, in addition to the personal property provided in the 2023 Factoring Agreement, also include the DIP Collateral granted in the Interim Order and Final Order granting the Motion.

(b)     There is hereby added the following new subsection (i) in Section 2.4:

(i)     **DIP Financing Fee**. A 1.0% origination fee shall be charged to the Maximum Amount.

(c)     There is hereby added the following new Section 9 entitled, "Chapter 11 Bankruptcy Provisions" with the following subsections:

9.1     The Post-Petition Obligations (as defined in the Interim Order and Final Order) incurred by the Debtors pursuant to the Post-Petition Agreements shall be secured by the DIP Collateral as defined in the Interim Order and the Final order.

9.2     The Debtors shall at all times timely and promptly comply with all substantive and procedural requirements of the United States Bankruptcy Court, United States Bankruptcy Code, Federal Rules of Bankruptcy Procedures, and all applicable local rules of court including any administrative orders, including promptly paying all post-petition taxes and other obligations including those required under 28 U.S.C. § 1930(a)(6);

9.2     The Debtors shall notify CFGT within three (3) days of receiving any documents or correspondence from the Internal Revenue Service ("IRS"), or any state or municipal agency or unit, that Debtor has defaulted on Debtor's post-petition obligations, including, but not limited to, any failure by the Debtor to pay its obligations to the IRS;

9.3     The Debtors shall notify CGFT within three (3) days of receiving any documents or correspondence from any landlord or owner of the Debtor's leased premises that Debtor has defaulted on Debtor's post-petition rental or lease obligations;

9.4     The Debtors shall immediately notify CGFT, in writing, of the occurrence of any Event of Default, as that term is defined in Section 7 of

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 7

the 2023 Factoring Agreement and further supplemented by the Interim Order or the Final Order and this Bankruptcy Rider; and

9.5    Until confirmation of a plan, neither the Debtors' filings of voluntary petitions for relief under the Bankruptcy Code on the Petition Date, nor the Debtors' financial condition immediately preceding the filing of its voluntary petitions on the Petition Date, to the extent that such filings constitute an Event of Default under the 2023 Factoring Agreement, shall constitute an Event of Default under the Post-Petition Agreements.

(d)    During the pendency of this Bankruptcy Case, Section 3.2 of the 2023 Factoring Agreement entitled "Termination" is modified and supplemented to add the following sentence:

CGFT may terminate the agreement at any time by filing a notice with the Bankruptcy Court on the earlier of:

i.    Upon the occurrence of any Event of Default and the failure to fully cure each and every monetary and non-monetary Event of Default within five (5) days of receiving notice of CFGT of the occurrence of such Event of Default; or

ii.    Immediately upon the Debtors receiving notice from the IRS of the Debtors having committed one or more defaults on its post-petition obligations that may become owing to the IRS.

(e)    The reference to "Client" in the 2003 Factoring Agreement shall mean the Borrowers, Townley Lumber and Townley Pallet, individually and collectively, jointly and severally.

23.    More specifically, and to accomplish the above, and as provided for in Bankruptcy Rules 4001(b)(1)(B), (c)(1)(B), and (d)(1)(B), Debtors have offered to provide CFGT certain additional rights, as provided in the proposed Interim Order (the "Interim Order") annexed hereto as **Exhibit C**. CFGT and Debtors have agreed to the following material provisions as summarized below:

- Pursuant to the Post-Petition Agreements and Section 9-406 of the Texas Business & Commerce Code, CFGT is expressly authorized to send and deliver to any customer of Debtor (an "Account Debtor") one or more written notifications of assignment in order to notify each such Account Debtor that Debtor has sold, assigned

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession**
**Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;**
**(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 8**

and/or transferred to CFGT the right to receive payment due in connection with any present and future Accounts, and all Accounts shall be payable and paid solely to Triumph as provided in such written notification of assignment. *See Interim Order Paragraph 5.*

- Pursuant to Section 364(c)(1), (c)(1) and (d)(1) of the Bankruptcy Code, as security for the Repurchase Obligation on Purchased Accounts, CFGT is hereby indefeasibly granted a valid perfected first and senior ownership interest in all Purchased Accounts as well as a first and senior priority security interest and lien in all of Debtor's assets acquired after the commencement of this Chapter 11 Case. *See Interim Order Paragraph 11.*

- The automatic stay shall be modified to permit CFGT to retain and apply all collections of pre-petition and post-petition Purchased Accounts and non-purchased accounts to the repayment of Debtors' pre-petition and Post- Petition Obligations. *See Interim Order Paragraph 4.*

24.    The Post-Petition Agreements between Debtors and CFGT were negotiated in good faith and at arm's length between Debtors and CFGT and any Advances made or other financial accommodations which are caused to be issued to Debtors by CFGT pursuant to the Post-Petition Agreements have been extended in good faith, as such term is used in Sections 363(m) and 364(e) of the Code, and CFGT should be entitled to the full protection of Sections 363(m) and 364(e) of the Code in the event that the Order approving this Motion or any provision hereof is vacated, reversed or modified, on appeal or otherwise, but only to the extent that cash collateral is used or financing provided as authorized therein.

### Relief Requested

25.    Debtor seeks authority from the Court for use of Cash Collateral of the Debtors and for the sale of Debtors' Accounts pursuant to Section 363 of the Bankruptcy Code as well as obtaining credit pursuant to Section 364 of the Bankruptcy Code. Debtors submit CFGT shall

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession**
**Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;**
**(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 9**

only offer the terms contained in the Post-Petition Agreements to Debtor subject to the relief requested herein.

26.     With respect to the sale component, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may…sell…other than in the ordinary course of business, property of the estate." Pursuant to Section 1107 of the Bankruptcy Code, Debtor, as a debtor-in-possession "shall have all the rights…, and powers, and shall perform all the functions and duties…, of a trustee serving in a case under this chapter." Moreover, Section 363(c) of the Bankruptcy Code states, in relevant part, that:

> (1) If the business of Debtor is authorized to be operated under section…1108…of this title and unless the court orders otherwise, the trustee [Debtor] may enter into transactions, including the sale…of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

27.     In the instant case, Debtors cannot operate without factoring their receivables. Specifically, Debtors will be unable to generate sufficient cash flow to continue operations without the ability of CFGT to acquire the Purchased Accounts. Indeed, Debtors have utilized factoring with CFGT for several years now and do not otherwise maintain adequate cash flow to fund their operations on extended credit terms with its customer base. Absent Debtors' ability to continue to sell the Purchased Accounts to CFGT, Debtors' operations would need to immediately cease.

28.     As to the credit component, Section 364 of the Bankruptcy Code permits courts to grant creditors senior lien rights in debtor's post-petition assets in exchange for extending necessary post-petition credit. See *In re Futures Equity L.L.C.*, 2001 Bankr. LEXIS 2229 (Bankr. N.D. Tex. April 11, 2001); *In re Barbara K. Enterprises, Inc*., No. 08-11474 (MG), 2008 Bankr. LEXIS 1917 at *10 (Bankr. S.D.N.Y. 2008)("To obtain credit…a debtor must prove that (1)

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 10

Debtor cannot obtain credit unencumbered by super-priority status; (2) the credit transaction is necessary to preserve assets of the estate; and (3) the terms of the agreement are fair, reasonable, and adequate."). In pertinent part, Section 364 of the Bankruptcy Code states:

> If the trustee [or Debtor] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> > (1)  with priority over any or all administrative expenses of the kind  specified in section 503(b) or 507(b) of this title;
> >
> > (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> >
> > (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> > (A) the trustee [or Debtor] **is unable to obtain such credit otherwise**; and
> >
> > (B) **there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted**.
> >
> > **Emphasis Added**

"To support a financing request, a debtor should provide evidence of a potential benefit for the estate in obtaining the financing." *In re Barbara K. Enterprises, Inc*., 2008 Bankr. LEXIS 1917, at *14. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. See *In re Snowshoe Co*., 789 F.2d 1085, 1088 (4th Cir. 1986); In re Ames Dep't Stores, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

29.     In the instant case, Debtors' ability to continue operations by receiving working capital from CFGT in the form of Advances is necessary to avoid immediate and irreparable harm

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 11

to the estate. Debtors' ability to obtain debtor-in-possession factoring facilities from DCGT will allow Debtors to continue operating so that they can continue with this reorganization by proposing a plan to satisfy the claims of creditors. Debtors have negotiated the best terms available to obtain the funding they need to maintain sufficient liquidity to preserve their assets over the course of these chapter 11 proceedings. Debtors submit that the circumstances of these proceedings require Debtors to obtain financing under Section 364(c) and (d) of the Bankruptcy Code, as CFGT requires such relief provided in the Post-Petition Agreements. Debtors have operated pursuant to the 2023 Factoring Agreement for years and are simply unable to obtain alternative financing from any other financing company or lender at this juncture. Further, without continued access to factor their receivables under the Post-Petition Agrements, Debtors will be forced to immediately cease operations, leaving no ability to pay their employees and independent contractors or service their customers.

30.     Pursuant to Section 364(d) of the Bankruptcy Code, a court may authorize a debtor to obtain credit secured by a senior or equal lien on property of a debtor's estate that is subject to a lien if the debtor demonstrates it is unable to obtain such credit otherwise. 11 U.S.C. § 364(d)(1)(A).  However, Section 364(d) of the Bankruptcy Code does not require that a debtor seek alternative financing from every possible lender; rather, the debtor must demonstrate that sufficient efforts were made to obtain financing on other terms. *Bray v. Shenandoah Fed. Savs. & Loan Assoc. (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986)* (finding that the trustee's unsuccessful efforts in seeking financing from lenders in the immediate geographical area sufficiently demonstrated that trustee was unable to obtain alternative financing); *In re 495 Central Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)* (holding that the debtor's testimony

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 12

that its numerous failed attempts to procure financing from various sources sufficiently demonstrated its unsuccessful efforts to obtain financing on other terms).

31.    In the instant case, Debtors will present testimony at the emergency hearing that despite their efforts, Debtors are unable to (obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought. As a result, Debtor submits that it has met its burden of proof on this issue.

## Secured Creditors are Adequately Protected

32.    What constitutes adequate protection must be decided on a case-by-case basis, though the Fifth Circuit has set forth certain criteria that should be considered including "the value of the collateral . . . the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is adequate, whether property taxes are being paid, and the prospects for the successful reorganization of the debtor's affairs."[2] The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.[3]

33.    In the instant case, to the extent any creditor of Debtors (other than CFGT) holds a valid, enforceable, unavoidable, perfected pre-petition claim secured by the Collateral, as adequate protection, said creditor shall receive a post-petition replacement lien on Debtors' post-petition assets, subordinate in priority to the liens and security interested granted to CFGT, and

---

[2] *In re Mendoza*, 111 F.3d 1264, 1272 (5th Cir. 1997); *In re Las Torres Development L.L.C*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009); see also *MNBank Dallas, N.A. v. O'Connor (In re O'Connor*), 808 F.2d 1393, 1396 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).
[3] See In re *Swedeland Dev. Group, Inc*., 16 F.3d 552, 554 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession**
**Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;**
**(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 13**

only to the same extent, validity and priority as existed pre-petition and only to the extent that the use of any pre-petition assets results in a decrease in the value of such creditor's interest in the pre- petition Collateral.

34.     Further, any and all secured creditors are adequately protected because Debtors propose to use the Advances to preserve the value of its estate. Without such use, the Purchased Accounts and resulting cash collateral would not exist, and Debtors would be forced to immediately cease operations and liquidate its estate. Courts generally have found that secured creditors are adequately protected and have authorized the use of cash collateral where the proposed continued use of the cash collateral will preserve the value of the secured creditors' other collateral, providing further adequate protection. See, *e.g., In re Salem Plaza Assocs*., 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral from shopping center to pay operating expenses, thereby "preserving the base that generates the income stream," provided adequate protection to the secured creditor).

35.     As a result, the foregoing forms of adequate protection will sufficiently protect any alleged interests of the Secured Creditors in the Collateral, including any Advances. Therefore, the adequate protection proposed by Debtors is fair and reasonable and sufficient to satisfy the requirements of Section 364(d) of the Bankruptcy Code.

**Debtor Requests Approval on an Interim Basis**

36.     Debtors' ability to continue operations by receiving working capital from CFGT in the form of Advances is necessary to avoid immediate and irreparable harm to the estate. Debtors believe that it is essential that Debtors be permitted to sell their Accounts to CFGT in order to continue their operations with the good faith expectation that they will achieve a successful reorganization. Debtors are in the business of milling lumber, constructing pallets and

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 14

transporting pallets to the end users, and without steady access to working capital Debtors will be unable to meet their payroll obligation, pay their independent contractors (loggers), fund continuing operations, or otherwise finally sustain their operations. Debtors have evaluated their short-term financing and cash flow requirements and have reason to believe that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the financing or the Budget.

37.     Notwithstanding the very early stage of the case, Debtors nonetheless believe that they will be able to successfully reorganize. Debtors' primary concern is to ensure that their business continues to move ahead as smoothly as possible and without interruption during this Chapter 11 Case. Debtors' ability to obtain debtor-in-possession factoring facilities via the Rider and the proposed Interim Order will allow Debtors to continue operating so that they can continue with this reorganization by proposing a plan to satisfy the claims of creditors. Debtors' ability to convert its accounts into working capital, is key to Debtor's success going forward.

38.     Finally, Debtors and CFGT jointly seek the protections afforded pursuant to 11 U.S.C. § 363(m) and 11 U.S.C. § 364(e), so that in the event of any reversal or modification on appeal of the Interim Order, no such order shall affect the validity of any debt incurred, or any priority or lien so granted to CFGT, and the Court is requested to find that the extension of credit and the factoring facilities offered, and specifically the terms set forth in the Rider and proposed form of Interim Order, are being provided in good faith.

**Request for Final Hearing and
Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

39.     To implement the foregoing successfully, Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h),

In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 15

"[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent potentially irreparable damage to Debtors' operations, value, and ability to reorganize. Accordingly, Debtors submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

### Notice

40.      The Debtors will provide notice of this motion to each of the following parties or its counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) the holders of the 20 largest unsecured claims against the Debtors; (c) the United States Attorney's Office for the Northern District of Texas; (d) the Internal Revenue Service; (e) any creditor known to have filed a UCC-1 financing statement concerning the Debtors' assets with the Secretary of State of Texas as of the Petition Date; (f) the Attorney General and Comptroller of Public Accounts for the State of Texas; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice is needed.

**WHEREFORE, PREMISES CONSIDERED,** W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., Townley Pallet Manufacturing, LLC, and TLC Transportation, L.L.C., Debtors-in-Possession herein, respectfully pray for an Order of this Court granting the relief proposed herein on a preliminary and continuing basis and for such other and further relief, at law or in equity, to which the Debtor may be shown justly entitled.

Dated this the 26th day of March 2025.

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession**
**Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;**
**(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 16**

Respectfully submitted,

ROCHELLE MCCULLOUGH, LLP
300 Throckmorton, Suite 520
Fort Worth, TX 76102
Telephone: 817.347.5260
Facsimile: 817.347.5269
http://www.romclaw.com


By:    /s/ Joseph F. Postnikoff
          Joseph F. Postnikoff
          State Bar No. 16168320
          Email: jpostnkoff@romclaw.com

PROPOSED COUNSEL FOR DEBTORS-IN-
POSSESSION

## CERTIFICATE OF CONFERENCE

I certify that I have emailed each of the following parties regarding the relief requested in the Motion and have been advised as follows as of the time of filing of the Motion:

| Name | Party | Email Address | Position |
|------|-------|---------------|----------|
| Erin Schmidt Susan Hersh | United States Trustee | erin.schmidt2@usdoj.gov Susan.Hersh@usdoj.gov | No position |
| Emily Chou | Commercial Finance Group/Texas, LLC | emily.chou@vhh.law | Unopposed |
| Dawn Theiss | Internal Revenue Service | Dawn.Theiss@usdoj.gov | No response |
| Dawn Theiss | Small Business Administration | Dawn.Theiss@usdoj.gov | No response |
| Bonnie Barksdale | Regions Bank | bbarksda@ccsb.com | No response |


          /s/ Joseph F. Postnikoff
          Joseph F. Postnikoff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of March 2025, a copy of the foregoing Motion was served via ECF on the parties registered with the Court to receive ECF and via first class United States mail on the parties listed on the attached service list.


          /s/ Joseph F. Postnikoff
          Joseph F. Postnikoff

**In re W.D. Townley Lumber Co., Inc., d/b/a Townley Lumber Co., et al., Debtors in Possession
Emergency Motion for Interim and Final Orders (a) Authorizing Interim Use of Cash Collateral;
(b) Granting Adequate Protection; and (c) Scheduling a Final Hearing – Page 17**

| COMPANY NAME | MANAGER NAME | COMPLETED BY | DATES REPRESENTED | DATE OF LAST UPDATE |
|---|---|---|---|---|
| WD Townley and Son Lumber Co. | Aleigh Townley | Aleigh Townley | 3/24/2025 - 4/7/2025 | Wednesday, March 26, 2025 |
| | | | | |
| | | | | |
| BEGINNING BALANCE \| CASH ON HAND | $          184,724.86 | We receive funding on Monday, Wednesdays and Fridays. | | |
| | | | | |
| **Cash Receipts** | | | | |
| Factoring Receivables - based on projected loads to sell | $          412,000.00 | | | |
| Net 30/Open Accounts | - | | | |
| Net 60/Open Accounts | - | | | |
| Net 90/ Open Accounts | - | | | |
| Net 120/ Open Accounts | - | | | |
| **TOTAL CASH RECEIPTS** | **$          412,000.00** | **$          -** | **$          -** | **$          -** |
| | | | | |
| **( – ) CASH PAYMENTS** | | | | |
| **( – ) General Overhead** | | | | |
| PAYROLL (2 weeks) | $          168,000.00 | | | |
| PAYROLL TAXES (2) periods | $          38,000.00 | | | |
| Loggers (2) periods | $          180,000.00 | | | |
| Fuel | $          32,000.00 | | | |
| Parts - Smith Saw, ABC Auto | $          22,000.00 | | | |
| Miscellaneous Supplies | $          4,000.00 | | | |
| Repairs & Maintenance - Electrical work | $          8,000.00 | | | |
| Prepetition payroll and logger checks outstanding | $          81,817.50 | | | |
| | $          - | | | |
| **TOTAL GENERAL OVERHEAD** | **$          533,817.50** | **$          -** | **$          -** | **$          -** |
| | | | | |
| **TOTAL OTHER EXPENSES** | **$          -** | **$          -** | **$          -** | **$          -** |
| | | | | |
| **TOTAL CASH PAYMENTS** | **$          533,817.50** | **$          -** | **$          -** | **$          -** |
| | | | | |
| **NET CASH CHANGE** (CASH RECEIPTS – CASH PAYMENTS) | **$          (121,817.50)** | **$          -** | **$          -** | **$          -** |
| | | | | |
| **ENDING CASH POSITION** (CASH ON HAND + CASH RECEIPTS – CASH PAYMENTS) | **$          62,907.36** | **$          -** | **$          -** | **$          -** |

## POST-PETITION CHAPTER 11 BANKRUTPCY RIDER TO
## FACTORING AND SECURITY AGREEMENT

This Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement (hereinafter referred to as "Bankruptcy Rider") is made and entered into effective the ___ day of _____, 2025, by and between the Chapter 11 Debtors and Debtors-In-Possession, W.D. Townley and Son Lumber Co., Inc., d/b/a Townley Lumber Co., and Townley Pallet Manufacturing Company, LLC (each a "Debtor" and, collectively, the "Debtors" or "Client") and Commercial Finance Group/Texas, LLC ("CFGT").

## RECITALS

On or about October 6, 2023, the Debtors and CGFT entered into that certain Factoring and Security Agreement dated October 6, 2023, and other related documents (collectively, the "2023 Factoring Agreement").[1]

Prior to the Petition Date (as defined below), CFGT duly perfected its ownership interest in the Debtors' Purchased Accounts and its first priority security interest in the Collateral, as granted and identified in the 20023 Factoring Agreement, pursuant to UCC-1 Financing Statements filed with Texas Secretary of State bearing the filing numbers 19-0037930870 and 24-0021192293.

On March _, 2025 (the "Petition Date") each of the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Bankruptcy Court"). The Debtors' cases are jointly administered under Case No. 25-_____ (hereinafter "Bankruptcy Case").  The Debtors are and remain authorized to operate their businesses as debtors in possession under and in accordance with 11 U.S.C. §§ 1107(a) and 1108.

Subject to approval by the Bankruptcy Court, the Debtors and CFGT desire to continue, post-petition, to operate under the 2023 Factoring Agreement, as such may be supplemented, modified, or amended by this Bankruptcy Rider or any other related documents to be entered into between the Debtors and CFGT (the 2023 Factoring Agreement and this Bankruptcy Rider shall be collectively referred to as the "Post-Petition Agreements" but each may also be referenced separately).[2]

On March __, 2025, the Debtors filed the *Motion for an Interim and Final Orders Authorizing Debtors to (I) Use Cash Collateral; (II) Maintain and Continue to Operate Under Factoring and Security Agreement in Order to Sell Accounts Post-Petition to Commercial Finance Group/Texas, LLC and to Incur Credit From Commercial Finance Group/Texas, LLC*

---

[1]   Capitalized terms not otherwise defined in this Bankruptcy Ride shall have meaning given to them in the 2023 Factoring Agreement.

[2]   This Bankruptcy Rider to the 2023 Factoring Agreement may or may not have been signed prior to the approval of the Post-Petition Agreements by the Bankruptcy Court.

*Pursuant to 11 U.S.C Section 363(b), (c), (f) AND (m); (III) Obtain Credit from Commercial Finance Group/Texas, LLC Pursuant to 11 U.S.C. Sections 364(c)(1), (c)(2), & (d)(1); (IV) Grant Commercial Finance Group/Texas, LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of Debtors' Estates Pursuant to 11 U.S.C. Sections 361 and 363(e); (V) Grant Adequate Protection to Secured Creditors; (VI)Modify the Automatic Stay; and (VII) Grant Related Relief Retroactively to the Petition Date* (the "<u>Motion</u>") seeking interim (the "<u>Interim Order</u>") and final (the "<u>Final Order</u>") orders granting the Motion and approving and authorizing the Post-Petition Agreements subject to the terms of the Interim Order and/or the Final Order.

## <u>AGREEMENT</u>

Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows.

1.      The foregoing recitals shall be deemed a part of this Bankruptcy Rider for all purposes and are acknowledged by the Debtors as being true and correct.

2.      The parties' operation under the Post-Petition Agreements, including this Bankruptcy Rider, shall be conditioned upon and subject to the entry of the Bankruptcy Court's entry of the Interim Order and Final Order and the terms thereunder in a form satisfactory to CGFT approving the Post-Petition Agreements.

3.      The Debtors acknowledge that this Bankruptcy Rider is the product of joint negotiations between the parties hereto and represents the jointly conceived, bargained-for and agreed upon language mutually determined by the parties to express their intention in entering into this Bankruptcy Rider. Any ambiguity or uncertainty in this Bankruptcy Rider shall be deemed to be caused by, or attributable to, all parties hereto collectively. In any action or proceeding to enforce or interpret this Bankruptcy Rider, the Bankruptcy Rider shall be construed in a neutral manner, and no term or condition of this Bankruptcy Rider, or the Bankruptcy Rider as a whole, shall be construed more or less favorably to any one party, or group of parties, to this Bankruptcy Rider.

4.      The Debtors acknowledge that there is no basis to assert and Debtors shall be deemed to have waived any right to contest: (a) CFGT's ownership rights in the prepetition and/or post-petition Purchased Accounts (as defined in the 2023 Factoring Agreement) that have been sold to CFGT, (b) the Debtors' prepetition Obligations to CFGT that arose before the Petition Date (i.e. CFGT's allowed fully secured petition claim), (c) or otherwise seek to prevent or impair CFGT's rights to retain payment on all such prepetition and post-petition Purchased Accounts, (d) the validity, enforceability, priority of the liens and security interest granted to CFGT in the Collateral, including non-Purchased Accounts, (e) or otherwise assert against CFGT any of the avoiding powers under the Bankruptcy Code, including those powers that may arise under Bankruptcy Code §§ 544 through 552.

5.      The terms and protections afforded CFGT in the Post-Petition Agreements, and in the Interim Order and Final Order of the Bankruptcy Court approving and authorizing the Post-Petition Agreements may not be varied, altered or modified by any proposed plan of reorganization filed by the Debtors without Company's express written consent, and may not vary, alter or modify any rights that CFGT has against any guarantor or secondarily liable party. The filing of any plan in contradiction to these provisions shall be deemed to have filed in violation of 11 U.S.C. § 1129(a)(1) and (3) to the extent the content of such plan violates the proscriptions contained in this section.

6.      Whenever the Post-Petition Agreements require Debtors or CFGT to deliver a writing to, or serve a writing upon the other, such writing shall be delivered or served upon each as follows:

<u>In the case of the Debtors</u>:

Billy Joe Townley
Ana Aleigh Townley
13668 Highway 79S
Henderson, Texas 75662

- and -

Joseph F. Postnikoff
Rochelle McCullough, LLP
300 Throckmorton Street, Suite 520
Fort Worth, Texas 76102
jpostnikoff@romclaw.com

<u>In the case of CFGT</u>:

Tracy Eden
Commercial Finance Group
tdeden@cfgroup.net

- and –

Emily Chou
Vardabedian Hester & Haynes LLP
301 Commerce St., Ste. 3635
Fort Worth, Texas 76102
emily.chou@vhh.law

7.      Debtor shall cause its counsel to electronically deliver to Company, each of the following documents by no later than April 30, 2025:

(a)      All security agreements, promissory notes, UCC financing statements and guaranty agreements between Debtor and any party-in-interest that holds a security interest or lien on property of the estate;

(b)      All Notices of Tax Lien (whether federal, state or local) issued and/or delivered to the Debtors; and

(c)      All Notices of Tax Levy (whether federal, state or local) issued and/or delivered to the Debtors.

8.      The 2023 Factoring Agreement is amended as follows:

(a)     "Collateral" as defined in Section 1.1 shall, in addition to the personal property provided in the 2023 Factoring Agreement, also include the DIP Collateral granted in the Interim Order and Final Order granting the Motion.

(b)     There is hereby added the following new subsection (i) in Section 2.4:

   (i)     **DIP Financing Fee**. A 1.0% origination fee shall be charged to the Maximum Amount.

(c)     There is hereby added the following new Section 9 entitled, "Chapter 11 Bankruptcy Provisions" with the following subsections:

   9.1     The Post-Petition Obligations (as defined in the Interim Order and Final Order) incurred by the Debtors pursuant to the Post-Petition Agreements shall be secured by the DIP Collateral as defined in the Interim Order and the Final order.

   9.2     The Debtors shall at all times timely and promptly comply with all substantive and procedural requirements of the United States Bankruptcy Court, United States Bankruptcy Code, Federal Rules of Bankruptcy Procedures, and all applicable local rules of court including any administrative orders, including promptly paying all post-petition taxes and other obligations including those required under 28 U.S.C. § 1930(a)(6);

   9.2     The Debtors shall notify CFGT within three (3) days of receiving any documents or correspondence from the Internal Revenue Service ("IRS"), or any state or municipal agency or unit, that Debtor has defaulted on Debtor's post-petition obligations, including, but not limited to, any failure by the Debtor to pay its obligations to the IRS;

   9.3     The Debtors shall notify CGFT within three (3) days of receiving any documents or correspondence from any landlord or owner of the Debtor's leased premises that Debtor has defaulted on Debtor's post-petition rental or lease obligations;

   9.4     The Debtors shall immediately notify CGFT, in writing, of the occurrence of any Event of Default, as that term is defined in Section 7 of the 2023 Factoring Agreement and further supplemented by the Interim Order or the Final Order and this Bankruptcy Rider; and

   9.5     Until confirmation of a plan, neither the Debtors' filings of voluntary petitions for relief under the Bankruptcy Code on the Petition Date, nor the Debtors' financial condition immediately preceding the filing of its voluntary petitions on the Petition Date, to the extent that such

filings constitute an Event of Default under the 2023 Factoring Agreement, shall constitute an Event of Default under the Post-Petition Agreements.

(d)    During the pendency of this Bankruptcy Case, Section 3.2 of the 2023 Factoring Agreement entitled "Termination" is modified and supplemented to add the following sentence:

CGFT may terminate the agreement at any time by filing a notice with the Bankruptcy Court on the earlier of:

    i.    Upon the occurrence of any Event of Default and the failure to fully cure each and every monetary and non-monetary Event of Default within five (5) days of receiving notice of CFGT of the occurrence of such Event of Default; or

    ii.    Immediately upon the Debtors receiving notice from the IRS of the Debtors having committed one or more defaults on its post-petition obligations that may become owing to the IRS.

(e)    The reference to "Client" in the 2003 Factoring Agreement shall mean the Borrowers, Townley Lumber and Townley Pallet, individually and collectively, jointly and severally.

9.    This Bankruptcy Rider may be executed in counterparts, all of which taken together shall constitute a single document and either Debtors' or CFGT's signature of this Bankruptcy Rider may either be an original or in electronic format in order to constitute an original signature.

10.    This Bankruptcy Rider shall be binding on and inure to the benefit of the Debtors and CFGT, as well as their respective successors and assigns. Moreover, this Bankruptcy Rider shall be binding on any examiner or trustee that may subsequently be appointed, to the extent permitted by law.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals, the day first written above.

**BORROWERS:**                                          **FACTOR:**

W.D. Townley and Son Lumber Co., Inc.                   Commercial Finance Group/Texas, LLC,
d/b/a Townley Lumber Co.

By: _____                           By: _____
Name: _____                         Name: _____
Title: _____                        Title: _____
Dated: _____                        Dated: _____


Townley Pallet Manufacturing Company,
LLC

By: _____
Name: _____
Title: _____
Dated: _____

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| W.D. Townley Lumber Co., Inc. d/b/a | ) | Case No. 25-41053-elm11 |
| Townley Lumber Co., | ) | |
| | ) | |
| Townley Pallet Manufacturing, LLC, | ) | Case No. 25-41057-mxm11 |
| | ) | |
| TLC Transportation, L.L.C., | ) | Case No. 25-41058-mxm11 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**INTERIM ORDER AUTHORIZING DEBTORS TO: (I) USE CASH COLLATERAL; (II) MAINTAIN AND CONTINUE TO OPERATE UNDER FACTORING AND SECURITY AGREEMENT IN ORDER TO SELL ACCOUNTS POST-PETITION TO COMMERCIAL FINANCE GROUP/TEXAS, LLC AND TO INCUR CREDIT FROM COMMERCIAL FINANCE GROUP/TEXAS, LLC PURSUANT TO 11 U.S.C. SECTION 363(b), (c), (f) AND (m); (III) OBTAIN CREDIT FROM COMMERCIAL FINANCE GROUP/TEXAS, LLC PURSUANT TO 11 U.S.C. SECTIONS 364(c)(1), (c)(2) & (d)(1); (IV) GRANT COMMERCIAL FINANCE GROUP/TEXAS, LLC ADEQUATE PROTECTION IN THE FORM OF FIRST PRIORITY LIENS AND SECURITY INTERESTS ON PROPERTY OF THE DEBTORS' ESTATES PURSUANT TO 11 U.S.C. SECTIONS 361 AND 363(e); (V) GRANT ADEQUATE PROTECTION TO SECURED CREDITORS; (VI) MODIFY THE AUTOMATIC STAY; AND (VII) GRANT RELATED RELIEF <u>RETROACTIVELY TO THE PETITION DATE</u>**

Upon consideration of *Debtors' Motion for an Interim Order Authorizing to (I) Use Cash Collateral; (II) Maintain and Continue to Operate Under Factoring and Security Agreement[2] in Order to Sell Accounts Post-Petition to Commercial Finance Group/Texas, LLC and to Incur Credit From Commercial Finance Group/Texas, LLC Pursuant to 11 U.S.C Section 363(b), (c), (f) AND (m); (III) Obtain Credit from Commercial Finance Group/Texas, LLC Pursuant to 11 U.S.C. Sections 364(c)(1), (c)(2), & (d)(1); (IV) Grant Commercial Finance Group/Texas, LLC Adequate Protection in the Form of First Priority Liens and Security Interests on Property of Debtors' Estates Pursuant to 11 U.S.C. Sections 361 and 363(e)*; *(V) Grant Adequate Protection to Secured Creditors; (VI) Modify the Automatic Stay; and (VII) Grant Related Relief Retroactively to the Petition Date* (the "Motion")[3], the Court hereby makes the following findings of fact and conclusions of law:

The Court accepts the following admissions, stipulations and/or acknowledgements of the Debtors:

(a)   In a series of transactions, W.D. Townley and Son Lumber Co., Inc., Townley Pallet Manufacturing Company, LLC and TLC Transportation, L.L.C. borrowed funds from Regions Bank, certain of with are subject to guarantees by the United States Small Business Administration (the "SBA") collateralized by liens against real property of Townley Pallet Manufacturing Company, LLC and untitled personal property of W.D. Townley and Son Lumber Co., Inc., Townley Pallet Manufacturing Company, LLC and TLC Transportation, L.L.C. perfected by the filing of UCC-1 Financing Statements (the "Regions Bank Liens");

(b)   The Department of the Treasury, Internal Revenue Service (the "IRS") asserts claims for unpaid Form 940 and 941 taxes against W.D. Townley and Son Lumber Co., Inc. certain of which are secured by IRS tax liens filed with the Secretary of the State of Texas on March 5, 2024, December 2, 2024 and January 1, 2025 and recorded in Rusk County, Texas on November 27, 2024 (the "IRS Liens").

---

[2]   The parties are seeking approval to enable the Debtors to seamlessly continue selling its accounts pursuant to the 2023 Factoring Agreement as supplemented by the Rider.

[3]   Capitalized terms as used herein shall have the meanings given to them in the Motion, unless otherwise provided herein.

**Interim Order Authorizing Factoring and Security
Agreement, Use of Cash Collateral and To Incur
Credit**

(c)     The SBA has made a disaster loan to W.D. Townley and Son Lumber Co., Inc. and asserts liens against untitled personal property of W.D. Townley and Son Lumber co., Inc. and TLC Transportation, L.L.C. perfected by the filing of UCC-1 Financing Statements (the "SBA Liens");

(d)     Regions Bank, the IRS and the SBA are hereinafter referred to as the Secured Creditors;

(e)     On or about October 6, 2023, Commercial Finance Group/Texas, LLC ("CFGT") as factor, and W.D. Townley and Son Lumber Co., Inc., d/b/a Townley Lumber Co., and Townley Pallet Manufacturing Company, LLC (collectively the "Debtors"), as borrowers, entered into a Factoring and Security Agreement dated October 6, 2023,[4] which entitled CFGT to, among other things, purchase the Debtors' Accounts[5] arising from the Debtors' ordinary course of business (as amended, supplemented and/or restated, hereinafter, the ("2023 Factoring Agreement").

(f)     The Debtors and CFGT have entered into a Post-Petition Chapter 11 Bankruptcy Rider to Factoring and Security Agreement ("Rider", and together with the 2023 Factoring Agreement, the "Post-Petition Agreements"), which is subject to this Court's approval as requested by the Motion.

(g)     Prior to March 25, 2025 (the "Petition Date"), in exchange for CFGT's payments for purchase of the Debtors' Acceptable Accounts (as defined in the 2023 Factoring Agreement) (hereinafter, "Advances"), pursuant to and in accordance with the 2023 Factoring Agreement, CFGT asserts it possesses a pre-petition secured claim as of the Petition Date, which amount excludes fees and costs of whatever kind or nature, including attorneys' fees that CFGT is entitled to recover in accordance with the Post-Petition Agreements[6] ("Pre-Petition Obligations").

(h)     CFGT's liens and security interests granted by the 2023 Factoring Agreement are perfected by the following UCC-1 Financing Statements recorded with the Texas Secretary of State as follows:

UCC-1 19-0037930870

---

[4]    The 2023 Factoring Agreement is intended to serve as both a sale of the Debtors' accounts, in respect to those accounts for which Advances (or purchase price payments) are made by CFGT, and in addition, a security agreement to provide collateral securing the Debtor's monetary and non-monetary obligations and duties of performance which are, likewise, intended to be secured by the assets that serve as CFGT's collateral.   Due to this relationship, both the Bankruptcy Code and Rules involving the sale of accounts as addressed by 11 U.S.C. § 363 and post-petition financing and use of cash collateral and adequate protection as addressed by 11 U.S.C. § 364 and 363(c) are applicable.

[5]    The term "Accounts" as defined in Section 2 of the Factoring Agreement have the meanings given by the Uniform Commercial Code ("UCC"). The UCC, as enacted in Texas, defines "Account" to mean "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; for services rendered or to be rendered…"   Tex. Bus. Comm. Code § 9.102.
[6]    The "Post-Petition Agreements" consist of the 2023 Factoring Agreement and the Rider.

Assigned to CFGT by UCC 24-00024676
Continuation by UCC 24-00261468

UCC-1 24-0021192293

(i)  CFGT holds an unavoidable, duly perfected first priority ownership interest in pre-petition Purchased Accounts (as defined in the 2023 Factoring Agreement) and an unavoidable, duly perfected first priority security interest in the Collateral (as defined in the 2023 Factoring Agreement), including, but not limited to any non-Purchased Accounts that serves to secure CFGT's pre-petition secured claim arising under the 2023 Factoring Agreement.

(j)  The Debtors and CFGT stipulate that the terms of the Post-Petition Agreements between Debtors and CFGT were negotiated in good faith and at arm's length between Debtors and CFGT and any Advances made or other financial accommodations which are caused to be issued to Debtors by CFGT pursuant to the Post-Petition Agreements are deemed to have been extended in good faith, as such term is used in Sections 363(m) and 364(e) of the Code, and CFGT shall be entitled to the full protection of Sections 363(m) and 364(e) of the Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise, but only to the extent that cash collateral is used or financing provided as authorized herein.

The Court makes the following findings regarding the Post-Petition Agreements:

(a)  The Debtors' immediate need to obtain credit pursuant to the Post-Petition Agreements and use cash collateral is critical in order to enable the Debtors to continue operations, to minimize the disruption of the Debtors as "going concern" businesses and to administer and to preserve the value of the bankruptcy estates. The ability of the Debtors to convert their Accounts into working capital, maintain business relationships with vendors, suppliers and customers, to pay employees, and to otherwise finance operations requires the availability of the factoring facilities offered by CFGT and the Debtors do not have sufficient available sources of working capital and financing to operate their business or maintain their respective properties in the ordinary course of business without the factoring facilities;

(b)  The Debtors have moved timely to seeking the relief sought in the Motion. The Court notes that the Debtors set the Motion for an emergency hearing promptly, and that good cause exists to grant the protections to CFGT contained in this Interim Order retroactively to the Petition Date;

(c)  CFGT, the Debtors' pre-petition factor and proposed post-petition factor, is willing to purchase the Debtors' Accounts post-petition and make Advances to the Debtors only upon the conditions contained in the Post-Petition Agreements and this Interim Order;

**Interim Order Authorizing Factoring and Security
Agreement, Use of Cash Collateral and To Incur
Credit**

(d)     CFGT's agreement to enter into and operate under the Post-Petition Agreements and provide factoring facilities to fund the Debtors' operations is conditioned upon the Debtors agreeing that the Advances made by CFGT to the Debtors and   shall be used, in each case, solely in a manner consistent with the terms and conditions of the Post-Petition Agreements, this Interim Order and the Budget (defined below and as the same may be modified from time to time) solely for (1) working capital and other general corporate purposes, (2) permitted payment of costs of administration of this Chapter 11 Case as approved by the Court when necessary.

(e)     It is in the best interests of the Debtors' estates to maintain the pre-petition factoring relationship with CFGT by entering into the Post-Petition Agreements for CFGT to continue to purchase the Debtors' Accounts, and for CFGT to be permitted to make Advances and other financial accommodations to the Debtors under the terms and conditions of the Post-Petition Agreements and as set forth herein, to prevent a deleterious impact on the Debtors' businesses, assets, or opportunity to reorganize;

(f)     The purchase and sale of the Accounts and extension of credit under the Post-Petition Agreements by CFGT is in good faith and CFGT is entitled to the protections afforded pursuant to Bankruptcy Code § 363(m);

(g)     The credit and financial accommodations to be extended under the Post-Petition Agreements are being extended by CFGT in good faith, are fair and reasonable, and CFGT is entitled to the protection afforded pursuant to Section 364(e) of the Bankruptcy Code;

(h)     The interests of the Secured Creditors in the Cash Collateral, as such term is defined under Section 363 of the Bankruptcy Code, of W.D. Townley and Son Lumber Co., Inc., Townley Pallet Manufacturing Company, LLC and TLC Transportation, L.L.C. are adequately protected pursuant to the continuing and replacement liens junior to those of CFGT granted herein;

(i)     Under the circumstances, sufficient and adequate notice of the Motion and the hearing with respect thereto has been given in accordance with the Motion and pursuant to Bankruptcy Rule 4001(c) and Section 102(1) of the Bankruptcy Code as required by Section 364(c) and (d) of the Bankruptcy Code, and LBR 4001-1, 5070-1 and 9013-1, and no further notice of, or hearing on, the relief sought in the Motion having been required;

(j)     Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (G), (K) and (M);

(k)     This Court has jurisdiction over this proceeding and the property affected hereby pursuant to 28 U.S.C. §§157 and 1334;

(l)     Venue for this Bankruptcy Case and proceedings on the Motion is proper in this

**Interim Order Authorizing Factoring and Security
Agreement, Use of Cash Collateral and To Incur
Credit**

district pursuant to 28 U.S.C. §§ 1408 and 1409;

(m)     Good and sufficient cause exists for the entry of this Interim Order; and

(n)     For the purposes of this Interim Order and subject to a Final Order, granting the relief requested in the Motion, including authorizing the Debtors to use cash collateral and to obtain credit from CFGT post-petition in accordance with the Post-Petition Agreements, is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Accordingly, the requirements under Bankruptcy Rule 4001(b)(2) and (c)(2) have been satisfied for commencing an emergency hearing on the Motion prior to fourteen (14) days after service of the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.     The Motion is granted in its entirety subject to the provisions hereof. This Interim Order shall become effective immediately upon its entry.

2.     The Debtors and CFGT are hereby immediately authorized to enter into, and continue to operate under and in accordance with, the Post-Petition Agreements and this Interim Order, and shall further be entitled to execute, deliver, and perform all other documents, instruments, and agreements necessary to effectuate and carry out the terms of the Post-Petition Agreements and this Interim Order, and the Post-Petition Agreements are hereby approved in all respects, *retroactively*, as of the Petition Date, including, but not limited to, pursuant to Sections 363(b)(1), (d), (e) and (f). The Debtors are hereby authorized to sell Accounts to CFGT and CFGT is authorized, in its sole and exclusive discretion, to purchase Accounts and make Advances, overadvances, and to provide any other financial accommodations to the Debtors, after deduction by CFGT of amounts allowed under the Post-Petition Agreements. CFGT shall be the absolute owner of any Purchased Accounts purchased in accordance with this Interim Order and the Post-Petition Agreements, free of any claims and interests.

3.     The Debtors shall maintain the DACA in place pre-petition relating to 2023 Factoring Agreement and maintain the same sweeping and collection procedures for CFGT post-

petition relating to the Purchased Accounts under the Post-Petition Agreements.

4.    Effective immediately upon the entry of this Interim Order, in respect to the Debtors' existing Pre-Petition Obligations (as identified in the Stipulations, above), and to the extent: (a) that any of the pre-petition Accounts qualify as property of the estate under 11 U.S.C. §541, and (b) that any Advances made on or after the Petition Date by CFGT to or for the benefit of Debtors of whatever kind or nature, as well as any other hereafter arising obligations and indebtedness owing to CFGT under the Post-Petition Agreements ("Post-Petition Obligations"), the Debtors consent to a modification of the automatic stay and CFGT shall be free from any restrictions and shall be entitled to collect all Accounts directly from any Account Debtor and/or other payors, regardless of whether such Accounts arise from the sale of goods and/or performance of services the Debtors have or hereafter provide to its customers before and/or after the Petition Date. CFGT shall be irrevocably and unconditionally authorized and is hereby permitted to retain and apply all payments and proceeds of any Purchased Accounts purchased by CFGT and any non-Purchased Accounts, to the repayment of Debtors' Pre-Petition Obligations and Post-Petition Obligations, including, but not limited to, all Post-Petition Obligations of Debtors arising from the post-petition Advances made by CFGT to or for the benefit of Debtors of whatever kind or nature, in accordance with the Post-Petition Agreements. Nothing shall prevent CFGT from seeking any additional relief prior to and at the final hearing on the Motion.

5.    Pursuant to and as authorized by the Post-Petition Agreements and Section 9-406 of the Texas Business & Commerce Code, CFGT is expressly authorized to send and deliver to any customer of the Debtors (*i.e.*, Account Debtor) one or more written notifications of assignment in order to notify each such Account Debtor that the Debtors have sold, assigned and/or transferred to CFGT the right to receive payment due in connection with any present and future Accounts, and

all Accounts shall be payable and paid solely to CFGT as provided in such written notification of assignment. Debtors are specifically directed, as required by the 2023 Factoring Agreement, before sending any invoice to an Account Debtor which may or will constitute a Purchased Account, to clearly state in a manner satisfactory to CFGT that payment of Debtors' Purchased Accounts and non-Purchased Accounts are assigned and are factored by and payable exclusively to CFGT.

6.    Except as provided below, the Debtors shall at no time during this Chapter 11 Case seek to use or be permitted to use any "cash collateral" ("Cash Collateral") of CFGT, as such term is defined under Section 363 of the Bankruptcy Code, to the extent that the source of such Cash Collateral constitutes proceeds of Purchased Accounts, non-Purchased Accounts or payment intangibles ("Restricted Cash Collateral"). The parties agree, however, that prior to any Event of Default under the Post-Petition Agreements and this Interim Order, the following shall not constitute or qualify as Restricted Cash Collateral: Advances that CFGT makes to the Debtors in exchange for purchasing Purchased Accounts from the Debtors and which Debtors shall be entitled to use subject to the following limitations: for use only for the purposes specifically set forth in this Interim Order and the Post-Petition Agreements, and in compliance with the Budget ("Non-Restricted Cash Collateral").   Non-Restricted Cash Collateral and shall be exclusively subject to the first and senior priority security interest and liens granted herein to CFGT to secure any Post-Petition Obligations. Notwithstanding the forgoing, following the occurrence of any Event of Default, all Non-Restricted Cash Collateral shall automatically become Restricted Cash Collateral.

7.    In addition to any Event(s) of Default as defined in the Post-Petition Agreements, each of the following shall also constitute an Events of Default:

(a)    An order dismissing any of the Debtors' cases, converting any case to Chapter 7, appointing an examiner with expanded powers or a trustee in any case,

or terminating the authority of any Debtors to conduct business;

(b)     There is a default by any of the Debtors under this Order or the Post-Petition

Agreements;

(c)     If the Debtors seek any amendment or modification of this Interim Order

without the prior written consent of CFGT, and no such consent shall be implied by

any other action, inaction or acquiescence of CFGT; or,

(d)     If the Debtors file any plan of reorganization which does not provide for (i)

the full payment of CFGT's Pre-Petition Obligations and Post-Petition Obligations;

and (ii) a full and complete release of any and all claims that the Debtors or their

estates might have or assert against CFGT, or which is not otherwise acceptable to

the Factor in its reasonable discretion.

8.     The Debtors shall be authorized to use Non-Restricted Cash Collateral (*i.e.*,

Advances) in accordance with the terms of this Interim Order and the Budget as defined in Section

9 below.

9.     Attached to this Interim Order as an Exhibit hereto is the Debtors' cash flow budget

(the "Budget").   The Budget may be modified provided that the Debtors obtain the written consent

of CFGT and Secured Creditors, without further order of this Court, upon the filing of a copy of

the modified Budget with this Court and each such Budget shall be referred to herein as a

"**Budget.**"

10.    The Debtors shall timely deliver to CFGT, the Secured Creditors, and the United

States Trustee, by not later than the tenth (10th) business day of each month, a variance report in

a form approved by CFGT, reflecting on a line-item basis, the actual cash disbursements and

revenues for the preceding month and the percentage variance (the "Variance Percent") of such

actual disbursements and revenues from those reflected in the Budget for that period ("Variance Report"). Any disbursement by the Debtors other than for budgeted amounts as set forth in the Budget shall constitute an Event of Default in accordance with the provisions of this Order unless CFGT and Secured Creditors consent to those changes in writing; provided, however, that the Debtors may only make payments in excess of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual disbursements shall not exceed ten percent (10%) of the budgeted disbursements.

11.      As authorized by Section 364(c)(1) and (d)(1) of the Bankruptcy Code, as security for the payment and performance of all Post-Petition Obligations incurred by the Debtors pursuant to the Post-Petition Agreements, CFGT is hereby indefeasibly granted a valid, binding, enforceable and perfected first and senior ownership interest in all Purchased Accounts as well as a first and senior priority security interest and first and senior priming lien in all of the following property and assets of Debtors *acquired or arising on and after* the commencement of the Bankruptcy Case: all of the Debtors' rights, title and interest in and to each of the following, wherever located and whether now or hereafter existing or now owed or hereafter acquired or arising: (a) Accounts, (b) bank account of the Debtor subject to a DACA between the Debtors and CFGT, (c) Inventory (as defined under the UCC), (d) the Reserve (as defined in the Post-Petition Agreements), and (e) all books, records, reports, memoranda, and/or data compilations, in any form (including, without limitation, corporate and other business records, customer lists, credit files, computer programs, printouts and any other computer materials and records) pertaining to any of the foregoing and all proceeds of the foregoing (collectively, the "DIP Collateral"). Other than as expressly set forth herein, the first priority, senior security interest and liens granted to CFGT in the DIP Collateral shall not be made subject to or be made *pari passu* with or to any lien or security interest heretofore

or hereinafter granted in the Case or any case under Chapter 7 of the Bankruptcy Code upon the

conversion of the Case, or in any other proceedings superseding or related to any of the foregoing

(collectively, "Successor Case"). The security interest and liens in the DIP Collateral granted to

CFGT shall be valid and enforceable against any trustee or other estate representative appointed

in the Case or any Successor Case, and/or upon the dismissal of the Case or Successor Case. No

lien or interest avoided and preserved for the benefit of any estate pursuant to Section 551 of the

Bankruptcy Code shall be made *pari passu* with or senior to the security interest and liens granted

to CFGT. No person shall be permitted to seek to interfere with and/or impair, or otherwise seek

to enforce any right or privilege that may in any way interfere with and/or adversely affect any of

the rights, interests and claims provided to CFGT by the Debtors in respect to any DIP Collateral.

12.     As adequate protection to secure CFGT's Pre-Petition Obligations (*i.e.*, CFGT's

pre-petition Secured Claim), and to the extent that due to the use of any pre-petition assets by the

Debtors, CFGT suffers a decrease in the value of CFGT's interest in the Debtors' pre-petition

assets, CFGT is hereby indefeasibly granted, a valid, binding, enforceable and perfected first and

senior security interest and liens in the DIP Collateral, including Cash Collateral.  In no event

shall any party interfere with and/or impair, or otherwise seek to enforce any right or privilege that

may in any way interfere with and/or adversely affect any of the rights interests and claims

provided to CFGT by the Debtors herein and under the Post-Petition Agreements.

13.     Pursuant to Section 364(c)(1),(2), and (3) of the Bankruptcy Code, the Post-

Petition Obligations shall, except for fees owing to the United States Trustee, have superpriority

in payment over any administrative expenses or charges that are or may be incurred after the filing

of the Petition, including, without limitation, expenses, charges or claims of the kind specified in

Sections 503(b), 506(c), and 507(a) and (b) of the Bankruptcy Code.

14.     The Secured Creditors shall receive, as adequate protection to the extent of the diminution in value of each of their perfected interests in the Cash Collateral, a replacement lien in post-petition assets of the same character as their respective prepetition collateral and proceeds of post-petition assets of the same character as their respective prepetition collateral (collectively, the "Adequate Protection Liens"), whether now existing or hereafter acquired or arising, and wherever located (the collateral subject to such Adequate Protection Liens, the "Replacement Collateral") junior to the liens granted CFGT pursuant to this Order.   Notwithstanding the foregoing, the Adequate Protection Liens shall not encumber (i) any real property owned by the Debtor or the proceeds from the sale of any such property; or (ii) causes of action arising or recoverable under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, all transfers avoided under §§ 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, and all liens avoided under § 506(d) of the Bankruptcy Code.

15.Except as otherwise provided herein, the Adequate Protection Liens shall (i) be supplemental to and in addition to the prepetition liens or interests of each respective Secured Creditor, (ii) be accorded the same validity and priority as enjoyed by the prepetition liens or interests immediately prior to the Petition Date, and (iii) be deemed to have been perfected automatically effective as of the entry of this Order without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

16.Notwithstanding any other provisions of this Order, any agreements approved hereby, or any other orders in this Chapter 11 Case, any statutory liens (collectively, the "Tax Liens") held by Rusk County or any other ad valorem tax creditor (the "Taxing Authorities") for prepetition

and postpetition taxes shall not be primed nor made subordinate to any liens granted to any party hereby to the extent such Tax Liens are valid, senior, perfected, and unavoidable, and all parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Taxing Authorities are fully preserved.

17. CFGT and the Secured Creditors shall not be required to file, but are not restricted from doing so, any UCC financing statement(s) or other document(s) with any filing authority to further perfect and/or maintain perfection of such ownership in their respective collateral, or any security interest or lien granted pursuant to the Post-Petition Agreements and this Order, or take any other action in connection therewith; provided however, that if CFGT, in its sole discretion, shall elect to file any UCC financing statement or other document with respect to such ownership interest in the Purchased Accounts or security interests and liens in the DIP Collateral, the Debtors shall be deemed to have authorized the filing thereof and same shall be deemed to have been perfected at the time and on the date of commencement of this Chapter 11 Case, or as of the date of the filing of any previously filed financing statement, whichever is earlier.

18.    As a further condition of providing post-petition credit and any obligation of CFGT to make Advances pursuant to the Post-Petition Agreements, subject to the entry of the Final Order approving the Motion, the Debtors and their estates shall be deemed to have waived any claim to surcharge the DIP Collateral under section 506(c) of the Bankruptcy Code.

19.    Upon the occurrence of any event which would be an Event of Default under the Post-Petition Agreements and/or this Interim Order, the Debtors' right to use any Cash Collateral of CFGT, including, without limit, Non-Restricted Cash Collateral shall automatically terminate and the Debtors' right to secure further Advances from CFGT shall immediately terminate.

20.    The protections afforded to CFGT under the Post-Petition Agreements and this

Interim Order and any actions taken pursuant hereto shall survive the entry of any orders which may be subsequently entered in this case or any chapter to which this case may be converted and such ownership of the Purchased Accounts and security interests, liens and interests recognized or granted to CFGT under the Post-Petition Agreements and this Order shall continue in this and any superseding Chapter 7 case under the Bankruptcy Code and such ownership of the Purchased Accounts and security interests, liens, and interests shall maintain their priority as provided by this Order until all the Pre-Petition Obligations and Post-Petition Obligations have been paid and indefeasibly satisfied in full; and the time of payment of any and all of the Post-Petition Obligations arising out of or incurred pursuant to the Post-Petition Agreements shall not be altered or impaired by any plan of reorganization, whether proposed by Debtors or any other party-in-interest; and the Pre-Petition Obligations and Post-Petition Obligations of Debtors to CFGT under the Post-Petition Agreements shall not, in this Case, be discharged by the entry of any order confirming a plan of reorganization and, pursuant to Section 1141(d)(4) and 1192 of the Code, unless prior to or concurrently with the entry of such order, arrangements for CFGT to be paid in full and all monetary and non-monetary obligations under the Post-Petition Agreements, including the Pre-Petition Obligations and Post-Petition Obligations to be paid and indefeasibly satisfied.

21.     In the event of the occurrence of an Event of Default, and immediately upon the filing a notice of the occurrence of such Event of Default with the Bankruptcy Court, CFGT shall have the right (in addition to all of its other rights under the Post-Petition Agreements) to seek on an expedited basis further order of the Bankruptcy Court granting relief from the automatic stay under Section 362 of the Code authorizing CFGT to pursue any and all rights as described herein and directing Debtors (or any superseding Trustee) to immediately surrender and deliver peaceful possession of all the DIP Collateral to CFGT.

22.     Unless CFGT shall have given its prior written consent, or unless and until the Debtors indefeasibly pays all Pre-Petition Obligations and Post-Petition Obligations and fully satisfies all non-monetary obligations arising under the 2023 Factoring Agreement and Rider, there shall not, at any time, be entered in this case any further order that authorizes: (a) Debtors' use of CFGT's Cash Collateral in violation of the provisions of this Interim Order, (b) the use, sale or lease, other than in the ordinary course of business, of any property of Debtors in which CFGT has any interest, (c) the Debtors to obtain credit or incur any indebtedness that is (i) secured by a security interest or lien in property that constitutes part of CFGT's DIP Collateral or (ii) entitled to priority administrative status which is equal or senior to that granted to CFGT herein, or (iii) the enforcement by any creditor of a claim, the effect of which will authorize the seizure or application of any of the Purchased Accounts and/or DIP Collateral or proceeds thereof to be applied to such creditor's obligations.

23.     CFGT shall have the right, pursuant to the Post-Petition Agreements and this Interim Order, on reasonable notice to Debtors, at any time during Debtors' normal business hours, to perform a site visit/field examination inspection conducted by CFGT's representatives at the Debtors' locations, at such times and in such frequencies that CFGT may elect, to review Debtors' physical premises, interview staff or inspect Debtors' books and records and the DIP Collateral.

24.     The failure of CFGT to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Post-Petition Agreements, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

25.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, including, but not limited to, any creditor, equity holder or any direct, indirect, or incidental beneficiary.

26.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

27.     If this Interim Order or any of the provisions of this Interim Order are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect (a) the validity of the Post-Petition Obligations (as defined in Section 3, above) incurred by Debtors to CFGT prior to the effective date of such modification, vacatur or stay, or (b) the validity or enforceability of any ownership interest of CFGT in any Purchased Accounts and any security interest, lien or priority authorized or created hereby or pursuant to the Post-Petition Agreements. Notwithstanding any such modification, vacatur or stay, any Post-Petition Obligations incurred by Debtors to CFGT prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the provisions of this Interim Order, and CFGT shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the Post-Petition Agreements with respect to all such Post-Petition Obligations.

28.     Pursuant to Bankruptcy Rule 6004(h), the terms of this Order in respect to authorizing a sale of Debtors' Accounts shall be deemed immediately effective and enforceable and not stayed until the expiration of fourteen (14) days absent (i) an application by a party in interest for such stay in conformity with Bankruptcy Rule 8005 and (ii) a hearing upon notice to Debtors and CFGT.

29.     Upon entry of a Final Order, and until confirmation of a plan, CFGT shall be entitled to be reimbursed all of its reasonable attorneys' fees and costs in accordance with the following procedure: CFGT, by and through its counsel, shall transmit a copy of counsel's monthly statements for fees and costs (redacted as necessary to protect privileged and confidential information, including information protected by the attorney-client and/or work-product

**Interim Order Authorizing Factoring and Security
Agreement, Use of Cash Collateral and To Incur
Credit**

privileges) to: the United States Trustee and Debtors' counsel for their review each month. Unless a written objection (specifying the line item of the bill objected to, the reason for the objection and a proposed resolution of the objection) is received by CFGT's counsel within 15 days of submission of each monthly statement to each of the above-stated applicable parties, CFGT shall automatically be entitled to charge Debtors' Reserve or demand payment from the Debtors. To the extent any such party-in-interest fails to timely deliver a written objection, no further objection may thereafter be made in connection therewith and any objections shall be deemed to have been waived. Notwithstanding the foregoing, in no event shall the Debtors' obligation to reimburse CFGT its attorneys' fees and costs exceed the sum of $10,000.00 in any single calendar month. Any attorneys' fees and costs which exceed the sum of $10,000.00 shall be added to the Obligations owed CFGT but shall not affect the Maximum Amount.

30.     CFGT shall not be required to, but is not restricted from doing so, file a proof of Claim in the Case to preserve its right to receive a distribution applicable to any Pre-Petition Obligations and/or Post Petition Obligations owing to CFGT under and with respect to the Post-Petition Agreements.

31.     Nothing contained in this Interim Order shall serve to permit or authorize any Account Debtor to unilaterally modify or extend the terms of payment on Accounts or otherwise delay remitting timely payment of any Account to CFGT.

32.     If there is any conflict between this Interim Order and the Post-Petition Agreements, the terms and provisions of this Interim Order shall control.

33.     The Debtors, within forty-eight (48) hours following the entry of this Interim Order, shall cause copies of this Order and the Motion, with all attachments, to be served on each of the Debtors' 20 largest unsecured creditors, CFGT, the United States Trustee's Office, and all

other parties who are required to be served under Fed. R. Bankr. P. 4001(d), and any other Rules, including the Local Rules of this Court.

31.     So long as the Chapter 11 Case is pending, the United States Bankruptcy Court for the Northern District of Texas shall be the exclusive jurisdiction for all disputes relating to or arising out of this Interim Order, the 2023 Factoring Agreement, the Rider, and any other dispute that may arise regarding the terms of this Interim Order or any Final Order.   Nothing contained herein modifies or waives the Choice of Law provision set forth in the 2023 Factoring Agreement.

32.     This Interim Order is and shall be fully effective upon its entry.

33.     The authorization granted under this Interim Order shall expire on _____ 2024, at _____ a.m./p.m..   A final hearing shall be held on _____, 2025, at _____ a.m./p.m.   Any Objection to the Motion shall be filed with the Court and served on counsel no later than 5:00 p.m. on _____, 2025.

34.     In the event that the final hearing is, for whatever reason, delayed or continued the expiration date of this Interim Order shall be automatically extended until the final hearing date is scheduled.

### End of Order ###

## Exhibit A

**"Budget"**